UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Acuity Capital Management, LLC, Acuity
Master Fund, Ltd., and Lyxor Fund Limited,

      Plaintiffs,

v.      Civil No. 08-5434 (JNE/FLN)
        ORDER

MGI Pharma, Inc., a Minnesota corporation;
and Wells Fargo Bank, National Association,
as Trustee,

      Defendants.

John Boyle, Esq., and Matthew Kostolnik, Esq., Moss & Barnett, PA, appeared for Plaintiffs Acuity Capital Management, LLC, Acuity Master Fund, Ltd., and Lyxor Fund Limited.

David Tulchin, Esq., and William Monahan, Esq., Sullivan & Cromwell LLP, and David Crosby, Esq., Leonard, Street and Deinard, PA, appeared for Defendant MGI Pharma, Inc.

Nathaniel Zylstra, Esq., Faegre & Benson LLP, appeared for Defendant Wells Fargo Bank, National Association.

After MGI Pharma, Inc., refused their request to convert notes, Acuity Capital Management, LLC, Acuity Master Fund, Ltd., and Lyxor Fund Limited (collectively, Plaintiffs) brought this action against MGI Pharma and Wells Fargo Bank, National Association (Wells Fargo), for breach of contract, declaratory relief, and specific performance. The case is before the Court on Plaintiffs' motion for summary judgment and MGI Pharma's motion to dismiss or, in the alternative, for summary judgment. For the reasons set forth below, the Court dismisses this case.

## I. BACKGROUND

In March 2004, MGI Pharma and Wells Fargo entered into an Indenture pursuant to which MGI Pharma issued Senior Subordinated Convertible Notes due 2024 (Securities) in the

1

principal amount at maturity of $348 million.  Under the Indenture, Wells Fargo serves as the trustee.  MGI Pharma makes interest payments in March and September.  The final interest payment will take place in March 2011.

Acuity Master Fund and Lyxor Fund hold, in the aggregate, Securities whose principal amount at maturity is $12 million.  Acuity Capital Management is an investment advisor and manager of Acuity Master Fund and Lyxor Fund.

The Indenture provides that the Securities may be converted into shares of MGI Pharma's common stock under certain circumstances.  In January 2008, after merging into a subsidiary of Eisai Co., MGI Pharma became a wholly-owned subsidiary of Eisai.  Through its subsidiary, Eisai acquired all outstanding shares of MGI Pharma.  It is undisputed that MGI Pharma's common stock ceased to trade and was cancelled.

The merger triggered a right to convert the Securities with certain time limitations.  Almost all Securities were converted in January and February 2008.  However, neither Acuity Master Fund nor Lyxor Fund converted its Securities.  Security holders who converted before the effective time of the merger received 23.7642 shares of MGI Pharma's common stock for each Security having a principal amount at maturity of $1,000.  At the effective time of the merger, Eisai's subsidiary acquired all outstanding shares for $41 per share.  Pursuant to a Supplemental Indenture, holders who converted after the effective time of the merger received $974.33 for each Security having a principal amount at maturity of $1,000.

In April 2008, Acuity Master Fund and Lyxor Fund sought to convert their Securities.  MGI Pharma declined their request to convert.  Several months later, Plaintiffs brought this action.

## II.     DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1]  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiffs rely on several provisions of the Indenture and Supplemental Indenture to establish a right to convert the Securities.[2]  The Indenture and Supplemental Indenture provide that they "shall be governed by, and construed in accordance with, the laws of the State of New York," and the parties argue in terms of New York law.  Accordingly, the Court applies New York law:

---

[1]     The Court treats MGI Pharma's motion as one for summary judgment.

[2]     At the motion hearing, the Court questioned whether Acuity Capital Management had standing.  In response, Plaintiffs asserted that Acuity Master Fund and Lyxor Fund "actually suffered a loss" and that the funds "provided legally to Acuity Capital Management" the right to sue.  Under these circumstances, the Court doubts whether Acuity Capital Management has standing.  *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-10 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 2011 (2009).  Nevertheless, the Court need not resolve the issue of Acuity Capital Management's standing because the Court is satisfied that the funds have standing.  *See Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 826 n.1 (2002).

> Under New York law, when interpreting an indenture or contract, the words and phrases used by the parties must be given their plain meanings. If the contract is ambiguous, it should be resolved against the party who prepared or presented the document. However, the contract should not be interpreted phrase by phrase, but must be considered in its entirety, with all parts of it reconciled, if possible, in order to avoid an inconsistency.

*Whitebox Convertible Arbitrage Partners, L.P. v. IVAX Corp.*, 482 F.3d 1018, 1021 (8th Cir. 2007) (citations omitted). According to the Indenture and the Supplemental Indenture, the Supplemental Indenture forms a part of the Indenture for all purposes.

Article 4 of the Indenture governs the conversion of the Securities. Section 4.01(a) provides in part:

> Subject to and upon compliance with the provisions of this Article 4 and the Securities, at the option of the Holder thereof, any Security . . . may be converted into fully paid and nonassessable shares . . . of Common Stock of [MGI Pharma] prior to the close of business on the Final Maturity Date or such earlier date set forth in this Article 4 . . . at the Conversion Rate . . . in effect at the time of conversion and subject to the adjustments described below, only under the following circumstances . . . .

Six numbered clauses follow the quoted text. To establish their right to convert, Plaintiffs rely primarily on clauses 1, 5, and 6. Plaintiffs also rely on section 4.11 and the Supplemental Indenture.

*The merger*

The Court first addresses Plaintiffs' argument that they had a right to convert their Securities in April 2008 based on the merger. The following circumstance in which conversion is available appears in section 4.01(a)(5) of the Indenture: "(5) if [MGI Pharma] becomes a party to a consolidation, merger or binding share exchange or a transfer of all or substantially all of its assets pursuant to which all or substantially all of [MGI Pharma's] Common Stock would be converted to cash, securities or other property." Section 4.01(d) requires MGI Pharma to give

4

notice of a transaction contemplated by section 4.01(a)(5). It limits the time in which Securities may be converted, and it modifies the conversion right as of the effective time of the merger:

> In the case of a transaction contemplated by clause (5) of Subsection 4.01(a), [MGI Pharma] will notify Holders at least 25 days prior to the anticipated effective date of such transaction (the "Merger Notice"). Holders may surrender Securities for conversion at any time from and after the date which is 15 days prior to the anticipated effective date of such transaction until (but not including) the date which is 15 days after the actual effective date of such transaction. At the effective time of the transaction, the right to convert a Security into shares of Common Stock shall be changed into a right to convert such Security into the kind and amount of cash, securities or other property that the Holders would have received if the Holders had converted such Security into shares of Common Stock immediately prior to the actual effective time of the transaction.

In this case, it is undisputed that MGI Pharma entered into a merger agreement that contemplated the acquisition of all shares of MGI Pharma's common stock by Eisai's subsidiary, that MGI Pharma notified holders of Securities in late December 2007 of their right to convert, that the merger became effective on January 28, 2008, and that Plaintiffs first sought to convert their Securities in April 2008. Section 4.01(d) unambiguously limits the time in which holders of Securities may surrender their Securities for conversion due to a transaction contemplated by section 4.01(a)(5). February 12, 2008 is the date which is fifteen days after January 28, so the deadline to convert was February 11. Plaintiffs first sought to convert their Securities approximately two months later. Because the right to convert under section 4.01(a)(5) had expired when Plaintiffs attempted to convert, MGI Pharma's refusal of Plaintiffs' request to convert did not breach the Indenture.

Plaintiffs' attempt to avoid this conclusion is not persuasive. Plaintiffs assert that "section 4.01(a)(5) itself contains no time limitations"; that "[s]ection 4.01(d) references a time limitation associated with conversion arising out of a Merger, but the next sentence in that section is again unlimited as to time"; that "[s]ection 4.11(a) provides a right of conversion unlimited as to time"; and that "[t]he conversion right set forth at section 1.01 of the

Supplemental Indenture is similarly unlimited as to time." (Footnote omitted.) The Court rejects Plaintiffs' attempt to parse the Indenture and the Supplemental Indenture so as to read out any time limit. *See Whitebox Convertible Arbitrage Partners*, 482 F.3d at 1021; *Analisa Salon, Ltd. v. Elide Props., LLC*, 818 N.Y.S.2d 130, 131 (N.Y. App. Div. 2006) (stating that a "contract must be read as a whole in order to determine its purpose and intent, and . . . single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part" (quotation marks omitted)). Section 4.01(d) unambiguously imposes a time limitation on conversion of Securities pursuant to section 4.01(a)(5). True, the third sentence of section 4.01(d) does not contain a time limitation, but the deadline plainly appears in the second sentence. The third sentence has as its subject valuing post-merger conversions at the merger-date value. Given that subject, it would be strange grammatically to restate the fifteen-day limit that immediately preceded. As to section 4.11(a), it requires, as a condition precedent to several types of transactions including a merger, MGI Pharma to

> execute and deliver to [Wells Fargo] a supplemental indenture to this Indenture providing that the Holder of each Security then outstanding shall have the right to convert such Security into the kind and amount of shares of stock and other securities and property (including cash) receivable upon such . . . merger . . . by a holder of the number of shares of Common Stock deliverable upon conversion of such Security immediately prior to such . . . merger . . . .

Accordingly, MGI Pharma executed a Supplemental Indenture that states in part:

> In accordance with Section 4.11 of the Indenture, at and after the effective time of the Merger, the right to convert each $1,000 Principal Amount at Maturity of the Securities into shares of Common Stock shall be changed into the right to receive upon conversion $974.33 in cash per $1,000 Principal Amount at Maturity of the Securities.

As noted above, the Indenture's right to convert appears in section 4.01(a), which provides for conversion "only under the following circumstances," which are set forth in six numbered

6

clauses. Neither section 4.11(a) nor the Supplemental Indenture contradicts, overrides, gainsays, or in any way avoids the time limitation imposed on conversion pursuant to section 4.01(a)(5) by section 4.01(d). *See Whitebox Convertible Arbitrage Partners*, 482 F.3d at 1022 (declining to interpret a phrase in a contract in a manner that would leave other phrases without meaning).

*Section 4.01(a)(1)*

Plaintiffs also assert that they had a right to convert pursuant to section 4.01(a)(1), which sets forth the following circumstance in which conversion is available:

> (1) prior to the Final Maturity Date, if, at any time after June 30, 2004, as of the last day of the preceding calendar quarter, the Closing Price per share of the Common Stock was more than 120% of the then current accreted conversion price for at least 20 Trading Days in the period of the 30 consecutive Trading Days ending on the last Trading Day of such calendar quarter (for avoidance of doubt, once that condition is satisfied for any quarter, the Securities will be convertible at any time at the option of the Holder through the Final Maturity Date).

Before addressing the parties' arguments, the Court provides several definitions of terms that appear in section 4.01(a)(1). Section 4.06, which relates to adjustments to the conversion rate, defines "Closing Price" within the definition of "Current Market Price":

> For the purpose of any computation under this Subsection 4.06(a), the current market price (the "Current Market Price") per share of Common Stock on any date shall be deemed to be the average of the Closing Prices for the ten consecutive Trading Days ending on the earlier of (A) the Determination Date or the Expiration Date, as the case may be, with respect to distributions or tender offers under this Subsection 4.06(a) or (B) the "ex-date" with respect to distributions, issuances or other events requiring such computation under this Section 4.06. The closing price (the "Closing Price") of our Common Stock on any Trading Day shall be the last reported sales price or, in case no such sales price is reported on such date, the average of the reported closing bid and ask prices per share (or, if more than one in either case, the average of the average bid and the average ask prices per share), in either case on the NASDAQ National Market or, if the Common Stock is not listed or admitted to trading on the NASDAQ National Market, on the principal national securities exchange on which the Common Stock is listed or admitted to trading or, if not listed or admitted to trading on the NASDAQ National Market or any national securities exchange, or any comparable system, the closing sales price or, in case no reported sale takes place, the average of the closing bid and asked prices, as furnished by any two members of the National Association of Securities Dealers,

7

Inc. selected from time to time by [MGI Pharma] for that purpose. If no such prices are available, the Current Market Price per share shall be the fair value of a share of Common Stock as reasonably determined by the Board of Directors (which determination shall be conclusive and shall be evidenced by an Officers' Certificate delivered to the Trustee). The "ex-date" shall mean the first date on which the Common Stock trades on the applicable exchange or in the applicable market, regular way, without the right to receive such issuance or distribution.

Section 1.01 defines "Trading Day":

"Trading Day" means (i) if the Common Stock is quoted on the NASDAQ National Market or any other system of automated dissemination of quotations of securities prices, days on which trades may be effected through such system, (ii) if the Common Stock is listed or admitted for trading on any national or regional securities exchange, days on which such national or regional securities exchange is open for trading, or (iii) if the Common Stock is not listed on a national or regional securities exchange or quoted on the NASDAQ National Market or any other system of automated dissemination of quotation of securities prices, any Business Days. A Trading Day only includes those days that have a scheduled closing time of 4:00 p.m. (New York City Time) or the then standard closing time for regular trading on the relevant exchange or trading system.

Section 1.01 also defines "accreted conversion price": "on any day, the sum of the Issue Price per $1,000 Principal Amount at Maturity plus accrued Original Issue Discount on such Principal Amount at Maturity to that day divided by the then applicable Conversion Rate."

Plaintiffs maintain that the merger "permanently" set the Closing Price at $41 per share, that the accreted conversion price is $31.46,[3] and that the Closing Price was more than 120% of the accreted conversion price for all of the final thirty Trading Days of the first quarter of 2008. Arguing that no Closing Price existed after the merger, MGI Pharma contends that Plaintiffs may not convert pursuant to section 4.01(a)(1). The parties' dispute turns, then, on whether a Closing Price existed after the merger.

---

[3]  Plaintiffs calculate the accreted conversion price by dividing the original issue price of $747.62 by 23.7642, the number of shares per Security having a principal amount at maturity of $1,000 received by those who converted just prior to the merger. The Original Issue Discount begins to accrue on March 2, 2011.

8

The Court discerns no ambiguity in the definition of Closing Price. The definition does not contemplate the establishment of a Closing Price in perpetuity. Instead, the definition requires sales prices or bid and ask prices on securities exchanges or from securities dealers to calculate the Closing Price on a particular day. The definition assumes that MGI Pharma's common stock trades. After the merger, it is undisputed that MGI Pharma's common stock no longer traded. On every day after the merger, there were no last reported sales prices on any securities exchanges, no reported bid or ask prices per share on any securities exchanges, no closing prices reported by members of the National Association of Securities Dealers (NASD), and no closing bid and ask prices reported by members of the NASD. Accordingly, no Closing Price existed after the merger. Since no Closing Price existed after the merger, Plaintiffs cannot demonstrate that "the Closing Price per share of the Common Stock was more than 120% of the then current accreted conversion price for at least 20 Trading Days in the period of the 30 consecutive Trading Days ending on the last Trading Day of such calendar quarter." Consequently, Plaintiffs cannot convert pursuant to section 4.01(a)(1).

*Section 4.01(a)(6)*

Finally, Plaintiffs assert that they had a right to convert pursuant to section 4.01(a)(6), which provides the following circumstance in which conversion is available:

> (6) during the five consecutive Business Day period following any five consecutive Trading Day period ending at any time on or prior to March 2, 2019 in which the Trading Price for the Securities for each day of such five Trading Day period was less than 98% of the Conversion Value for the Securities for such Trading Day ("trading price condition"); provided that upon any conversion of Securities pursuant to this trading price condition if, on the Trading Day prior to applicable Conversion Date, the Closing Price per share of Common Stock is greater than the then current accreted conversion price of the Securities and less than or equal to 120% of the then current accreted conversion price of the Securities then such Holder shall receive, instead of shares of Common Stock calculated based on the Conversion Rate, cash or shares of Common Stock or a combination of cash and shares of Common Stock, at the option of [MGI

Pharma], with a value equal to the accreted principal amount of the Securities plus accrued and unpaid cash interest, if any, and accrued and unpaid Liquidated Damages, if any (a "Principal Value Conversion"); provided, further, that any Common Stock delivered upon a Principal Value Conversion will be valued at the greater of the accreted conversion price of the Securities as of the Conversion Date and the applicable stock price (as defined below) as of the Conversion Date.

Section 4.01(b), which provides several definitions of terms that appear in section 4.01(a)(6), follows:

> Following the surrender of Securities by a Holder for a conversion that is a Principal Value Conversion, [MGI Pharma] shall notify such Holder no later than the first Business Day following the Conversion Date for such Principal Value Conversion whether [MGI Pharma] shall pay the principal amount of the Securities being converted in cash and/or shares of Common Stock. [MGI Pharma] will deliver such cash and/or shares of Common Stock, together with any cash payable for fraction shares, to such Holder no later than the tenth Business Day following the Conversion Date. The "applicable stock price" shall mean, in respect of any Conversion Date, the average of the Closing Price per share of Common Stock over the five Trading Day period starting the third Trading Day following the Conversion Date. The "Conversion Value" for the Securities is equal to the product of (i) the Closing Price per share of the Common Stock on a given day and (ii) the then current Conversion Rate. The "Trading Price" of the Securities on any date of determination means the average of the secondary market bid quotations obtained by the Bid Solicitation Agent for $2,500,000 Principal Amount at Maturity of the Securities at approximately 4:00 p.m., New York City time, on such determination date from three independent nationally recognized securities dealers [MGI Pharma] selects, which may include one or more of the Initial Purchasers, provided that if three such bids cannot reasonably be obtained by the Bid Solicitation Agent, but two such bids are obtained, then the average of the two bids shall be used, and if only one such bid can reasonably be obtained by the Bid Solicitation Agent, this one bid will be used. If the Bid Solicitation Agent cannot reasonably obtain at least one bid for $2,500,000 Principal Amount at Maturity of the Securities from a nationally recognized securities dealer or if in [MGI Pharma's] reasonable judgment, the bid quotations are not indicative of the secondary market value of the Securities, then the Trading Price of the Securities will be deemed to be less than 98% of the Conversion Value on such determination date.

Plaintiffs contend that they satisfy the trading price condition of section 4.01(a)(6) because the merger permanently set the Closing Price at $41 per share; the Conversion Value is $974.33 (the product of $41 per share and the conversion rate of 23.7642 shares per Security having a principal amount at maturity of $1,000); Plaintiffs unsuccessfully attempted to obtain a

bid for their Securities; and no current, known market for the Securities exists. MGI Pharma maintains that Plaintiffs cannot satisfy section 4.01(a)(6).

Mindful of the obligation to consider the Indenture in its entirety, the Court briefly reviews the six clauses of section 4.01(a) that give rise to a right to convert. Clause 1, addressed above, plainly contemplates the existence of trades of MGI Pharma's common stock on securities exchanges or by securities dealers. Clause 2 provides a right to convert if MGI Pharma elects to redeem the Securities pursuant to Article 3 of the Indenture. The third clause provides for a right to convert if MGI Pharma makes certain distributions of rights to purchase common stock at less than the Closing Price to holders of its common stock. Like the first clause, the third clause unambiguously contemplates trades of MGI Pharma's common stock. Clause 4 provides for a right to convert if MGI Pharma makes certain distributions of instruments that have a per share value greater than 15% of the Closing Price. Clause 4, then, also contemplates the existence of MGI Pharma's common stock and its trading. The fifth clause, addressed above, gave rise to the right to convert that almost all holders of Securities exercised in January and February 2008. Again, Clause 5 applies if MGI Pharma "becomes a party to a . . . merger . . . pursuant to which all or substantially all of [MGI Pharma's] Common Stock would be converted to cash, securities or other property." Having summarized the first five circumstances that give rise to a right to convert, the Court turns to clause 6.

The sixth clause sets forth a trading price condition that compares the Trading Price for the Securities to the Conversion Value. The Conversion Value in turn depends on the Closing Price. As noted above, the definition of Closing Price depends on sales prices or bid and ask prices on securities exchanges or from securities dealers; the definition assumes that MGI Pharma's common stock trades. The trading price condition of clause 6, then, contemplates

trades of MGI Pharma's common stock.  The provisos of clause 6 reinforce this conclusion.  The first proviso defines a Principal Value Conversion, which compares the Closing Price per share of Common Stock to the current accreted conversion price of the Securities and provides for the distribution of cash, shares of common stock, or a combination of cash and shares of common stock.  The second proviso states how shares of common stock delivered pursuant to a Principal Value Conversion will be valued.  That valuation includes the "applicable stock price," which is defined as an average of the Closing Price over a certain number of days.  Especially when set against clause 5, the repeated references in clause 6 to the Closing Price and the potential distribution of shares of common stock reveal that clause 6's trading price condition depends on the existence of MGI Pharma's common stock and trades of that stock.

Plaintiffs nevertheless contend that they can satisfy the trading price condition of section 4.01(a)(6) because of the deemer clause in the final sentence of section 4.01(b).  The Court does not find Plaintiffs' reliance on that sentence persuasive because Plaintiffs do not acknowledge the context in which it appears.  As noted above, section 4.01(a)(6) itself plainly contemplates the existence of MGI Pharma's common stock and trades of that stock.  The same is true of section 4.01(b).  The fourth sentence of section 4.01(b) defines Conversion Value as the product of the Closing Price "on a given day" and "the then current Conversion Rate."  As noted above, the definition of Closing Price assumes that MGI Pharma's common stock trades.  The fifth sentence of section 4.01(b) defines the Trading Price of the Securities "on any date of determination" based on bid quotations for $2,500,000 Principal Amount at Maturity of the Securities.  The deemer clause provides that the Trading Price of the Securities will be deemed to be less than 98% of the Conversion Value "on such determination date" if no bid for $2,500,000 Principal Amount at Maturity of the Securities can be reasonably obtained or if the bid is not

indicative of the secondary market value. The final sentence of section 4.01(b) presumes that the Conversion Value on a given day has been determined. In the absence of MGI Pharma's common stock, no Conversion Value, as defined by section 4.01(b), can be calculated. Consequently, Plaintiffs cannot rely on section 4.01(b) to satisfy the circumstance contained in section 4.01(a)(6).

Plaintiffs contend that the conclusions reached above with respect to their alleged right to convert pursuant to the merger, section 4.01(a)(1), and section 4.01(a)(6) destroy the convertibility of their Securities. MGI Pharma responds that a right to convert pursuant to section 4.01(a)(2) will arise if ever MGI Pharma decides to redeem the Securities. Moreover, MGI Pharma accurately notes that Plaintiffs had a right to convert in January and February 2008; Plaintiffs did not exercise that right. Accordingly, the Court grants MGI Pharma's motion and dismisses this case.

### III.     CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. MGI Pharma's motion for summary judgment [Docket No. 11] is GRANTED.

2. Plaintiffs' motion for summary judgment [Docket No. 20] is DENIED.

3. This case is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 10, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge